ORIGINAL
D + F
C/M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
FRANCISCO GARCIA,

        Plaintiff,

  -against-

MAERSK, INC., AKTIESELSKABET
DAMPSKIBSSELSKABET SVENDBORG, and
DAMPSKIBSSELSKABET AF 1912,
AKTIESELSKABET

        Defendants
-----------------------------------------------------------x
MAERSK, INC., AKTIESELSKABET
DAMPSKIBSSELSKABET SVENDBORG, and
DAMPSKIBSSELSKABET AF 1912,
AKTIESELSKABET

        Third-Party Plaintiffs

  -against-

MTC TRANSPORTATION CORP. and 716
CORP., D/B/A MTC TRANSPORTATION CO.

        Third-Party Defendants.
-----------------------------------------------------------x

**MEMORANDUM AND ORDER**
No. 03-CV-5697 (FB)(RML)



FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUN 2 0 2005 ★
TIME A.M. P.M. _____

*Appearances:*
*For the Plaintiff:*
STEPHEN B. ROBERTS, ESQ.
Tabak, Mellusi & Shisha
29 Broadway
New York, NY 10006

*For Defendants/Third-Party Plaintiffs:*
LAWRENCE J. KAHN, ESQ.
Freehill Hogan & Mahar, LLP
80 Pine Street
New York, NY 10005

*For Third-Party Defendants:*
MARK L. LEVENSON, ESQ.
Cheven Keely & Hatzis
40 Wall Street
New York, NY 10005

**BLOCK, District Judge:**

Third-party defendants MTC Transportation Corporation and 716 Corporation (collectively "MTC") move to vacate a default judgment entered against them on August 26, 2004.[1] They contend (1) that personal jurisdiction is lacking because of improper service of process; alternatively, (2) that they have a meritorious defense. For the reasons that follow, the Court denies the motion.

### I.

Defendants/third-party plaintiffs Maersk, Inc., Aktieselskabet Dampskibsselskabet Svendborg and Dampskibsselskabet Af 1912, Aktieselskabet Maersk (collectively "Maersk") are Danish companies engaged in a range of activities worldwide, including shipping. MTC is a trucking company that is incorporated in and has its principal place of business in New York. On March 7, 2003, MTC took possession of a Maersk shipping container at the Port of Newark. On March 13, 2003, plaintiff Francisco Garcia ("Garcia"), an MTC employee, was allegedly injured by the door of that container.

In October 2003, Garcia commenced a lawsuit against Maersk in New York Supreme Court, Kings County, seeking over $1 million in damages for his alleged injuries. Maersk removed to this Court and, on May 5, 2004, filed a third-party complaint against

---

[1] The difference between MTC Transportation Corporation and 716 Corporation is not apparent from the record. In their moving papers, however, they refer to themselves collectively as "MTC Corp." and draw no distinction between the two corporations. *See* [MTC's] Aff. Supp. [Mot.]; Mem. L. [Supp. Mot.]. Furthermore, they share the same corporate offices and at least one corporate officer. *See* [MTC's] Aff. Supp. [Mot.] at ¶ 12 (referring to one individual, Mike Farino ("Farino"), as "the Vice President of MTC Corp."). Accordingly, the Court treats the two corporations as a single entity for purposes of this decision.

2

MTC seeking a declaration that "MTC and its insurers are contractually obligated to defend, indemnify and hold [Maersk] harmless for the costs, disbursements, counsel fees and other expenses incurred in the defense of this action." Third Party Compl. ¶ 13. Maersk based its claim on a contract between the parties, pursuant to which MTC

> agrees to defend, hold harmless and fully indemnify [Maersk] against any and all claims, suit, loss, damage, or liability, for bodily injury, death and/or property damage (including reasonable attorneys fees and costs incurred in the enforcement of this agreement) arising out of or relating to [MTC's]: Use or maintenance of the equipment during an interchange period; the performance of this agreement; and/or presence on the facility operator's premises.

Uniform Intermodal Interchange and Facilities Access Agreement ("Agreement") § F. (attached as Ex. 3 to Third Party Compl.). The Agreement also requires MTC to procure liability insurance naming Maersk as an additional insured. *See id.* The Agreement further provides that Maryland law shall govern its "validity, construction, enforcement and interpretation[.]" *See id.* § G.

Maersk hired a professional process server, United Process Service, Inc. ("United"), to serve its summons and third-party complaint on MTC. On May 28, 2004, Matthew C. Roth ("Roth"), one of United's licensed process servers, went to MTC's corporate offices; in his affidavits of service, Roth noted that the papers were accepted there by an individual who identified himself as Joe.[2] The affidavits of service further noted that the "person spoken to refused to state true first and/or last names"; accordingly,

---

[2] Roth executed separate affidavits of service for MTC Transportation Corporation and 716 Corporation.

3

he was identified therein as "Joe 'Smith[.]'" Affs. of Serv. (attached as Exhibit B to Maerk's Aff. Opp'n Mot.). In a separate affidavit submitted in opposition to MTC's motion, Roth explained that "[i]n my experience, it is not unusual for a person accepting service of process to refuse to give his full name or his last name" and that in such circumstances, Roth "use[s] common names like 'Smith' and 'Doe' on the affidavit of service." Roth Aff. ¶ 7 (attached as Exhibit C to Maerk's Aff. Opp'n Mot.). The affidavits of service included a description of "Smith" as being approximately 40 years old, 6 feet tall, and 235 pounds. They also described "Smith" as being a "general agent[.]" Affs. of Serv. In his affidavit submitted in opposition to MTC's motion, Roth explained that he

> asked whether the person to whom I was speaking was authorized to receive and accept the papers. As the affidavits [of service] confirm, said person replied in the affirmative, and I thereupon served both sets of Third-Party Summons and Their-Party Complaints on said individual. . . . It has always been my custom and practice to identify . . . a person who states that he or she is authorized to accept service and thereafter accepts the service as a "general agent." For this reason, my affidavit[s] of service identified Joe "Smith" as a "general agent."

Roth Aff. ¶ 7-8.

In support of its motion, MTC submitted an affidavit of its vice president, Farino. He attested that "No Joe 'Smith' works at MTC[.]" Farino Aff. ¶ 3 (attached to [MTC's] Aff. Supp. [Mot.] as Ex. H).

Maersk alleges that on June 10, 2004, Maersk's counsel received a telephone call from an individual at MTC, who confirmed that the papers served by Roth were being forwarded to its insurer. MTC does not contest that allegation. Neither MTC nor its

4

insurer timely interposed an answer, which was due on June 19, 2004. On July 14, 2004, Maersk filed an application for a clerk's certificate of default, copies of which application were mailed to MTC's offices.[3] The certificate was issued on August 17, 2004. On August 19, 2004, Maersk applied to the Court for a default judgment, again mailing copies to MTC's offices. The application was granted on August 25, 2004. MTC did not take any action in this matter until September 22, 2004, when its attorney advised the Court that he intended to file the motion now before the Court.

## II.

### A. Service of Process

A defendant may move to set aside a default judgment on the ground that the "judgment is void." Fed. R. Civ. P. 60(b)(4). A judgment is void if entered against a party over whom the court lacks personal jurisdiction. *See Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84-87 (1988); *Velez v. Vassallo*, 203 F.Supp.2d 312, 317-18 (S.D.N.Y. 2002). In challenging personal jurisdiction pursuant to Rule 60(b)(4), a defendant that had notice of the proceedings bears the burden of establishing that service was improper. *See CSC Holdings, Inc. v. Fung*, 349 F. Supp. 2d 613, 616 (E.D.N.Y. 2004); *Velez* 203 F. Supp. 2d at 324 (S.D.N.Y. 2002).

---

[3] When a party has "failed to plead or otherwise defend" an action, the clerk "shall enter the party's default." Fed. R. Civ. P. 55(a). Local Civ. R. 55.1 allows a party to apply for a certificate of default pursuant to Fed. R. Civ. P. 55(a). Following entry of a clerk's certificate of default, a party may "apply to the court" for entry of a "judgment by default." Fed. R. Civ. P. 55(b)(2); *see also* Local Civ. R. 55.2(b).

5

Under the Federal Rules of Civil Procedure, service upon a corporation "may be effected in any judicial district of the United States . . . pursuant to the law of the state in which the district court is located." Fed. R. Civ. P. 4(e)(1), 4(h)(1). "Under the laws of New York, service on a corporation may be effected by tendering the summons to, *inter alia*, a corporate director, officer, or managing or general agent." *Old Republic Ins. Co. v. Pacific Fin. Servs.*, 301 F.3d 54, 57 (2d Cir. 2002) (citing N.Y. C.P.L.R. §311(a)(1)). In tendering service, a process server may rely upon a corporation's employees to identify individuals authorized to accept service. *See id.* As long as the process server's reliance on corporate personnel is reasonable, "the defendant may not later complain" that it was not properly served "even if the complaint was mistakenly delivered to a person who was not authorized to accept service." *Id.; see also Fashion Page, Ltd. v Zurich Ins. Co.*, 406 N.E.2d 747, 752 (N.Y. 1980) ("when the corporation is regularly doing business in the State, it generally cannot be heard to complain that the summons was delivered to the wrong person when the process server has gone to its offices, made proper inquiry of the defendant's own employees, and delivered the summons according to their directions.").

A process server's affidavit of service "establishes a prima facie case of the account of the method of service, and thus, in the absence of contrary facts, [courts] presume that [the defendant] was properly served with the complaint." *Old Republic*, 301 F.3d at 57. A defendant's sworn denial of receipt of service "rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing." *Id.* No evidentiary hearing is required, however, "where the defendant fails to

6

'swear to specific facts to rebut the statements in the process server's affidavits.'" *Id.* at 58 (quoting *Simonds v. Grobman*, 716 N.Y.S.2d 692, 693 (2000)).

Roth's affidavits of service establish a prima facie case that MTC was properly served with Maersk's third-party complaint. As noted, Roth attested that he inquired of Joe "Smith" whether he was authorized to accept service on behalf of MTC and received an affirmative response. It was, therefore, reasonable for him to rely on that response and deliver the summons and third-party complaint to "Smith". In an effort to rebut the presumption of proper service, MTC offered Farino's Affidavit, which stated that "No Joe 'Smith' works at MTC." Farino did not, however, attest that no one by the name of Joe or meeting the physical description contained in the affidavits of service works at MTC. Nor did Farino offer any specific facts to rebut Roth's statements that such an individual identified himself as being authorized to accept service on behalf of MTC. Thus, MTC has failed to rebut the presumption of valid service created by Roth's affidavit, no evidentiary hearing is required, and the Court will not vacate the default judgment as being void for lack of personal jurisdiction.

## B. Meritorious Defense

The Second Circuit has established three criteria to be considered in deciding whether to vacate a default judgment: "(1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir.1993). As noted, MTC focuses its argument on the last of these criteria. In particular, it argues that it has a meritorious defense because Garcia's injuries were the result of Maersk's negligence and

7

the Agreement's indemnification provision does not express an intent to indemnify Maersk against its own negligence. Whether a defense is meritorious "is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron*, 10 F.3d at 98.

In the recent case of *Lopez v. Louro*, 2002 WL 91273 (S.D.N.Y. Jan. 23, 2002), the Southern District of New York analyzed the precise contractual indemnification language at issue here and held that it obligated a trucking company to indemnify the owner of a container "even for its own negligence." *Id.* at *2. Like the contract at issue here, the contract in *Lopez* was governed by Maryland law. Under Maryland law, "a contract will not be construed to indemnify a party for its own negligence absent an express provision to that effect." *Id.* at *1 (citing *Mass Transit Admin. v. CSX Transportation, Inc.*, 708 A.2d 298 (1998) ("*CSX*")). In *CSX*, the Maryland Supreme Court construed an agreement "to indemnify, save harmless, and defend CSXT from any and all casualty losses, claims, suits, damages or liability of every kind arising out of the Contract Service under this Agreement," and found that "[i]n 'unequivocal terms,' the indemnification in the instant matter includes the liability of CSXT for its own acts or omissions." 708 A.2d at 310. Analyzing the contract at issue in *Lopez* in accordance with *CSX*, the Southern District reasoned that

> there is no reason to believe that the Maryland Supreme Court would reach a different conclusion with respect to the contract at issue here. Among other things, the contract at issue uses the same broad "arising out of" language that was at issue in *CSX*. It also contains a provision obligating the indemnitor to obtain liability insurance, which the court in *CSX* found indicative of

8

>an intent to extend the indemnity to cover negligence of the indemnitee.

*Lopez*, 2002 WL 91273, at *1.

As noted, the indemnification provision at issue here required MTC to "defend, hold harmless and fully indemnify" Maersk against "any and all claims, suit, loss, damage, or liability, for bodily injury, death and/or property damage arising out of or relating to" MTC's use or maintenance of the container. Agreement § F. Further, it obligated MTC to obtain liability insurance naming Maersk as an additional insured. Thus, the reasoning of the Maryland Supreme Court compels the conclusion that, under Maryland law, MTC is obligated to indemnify Maersk, even for Maersk's own negligence; therefore, MTC lacks a meritorious defense to Maersk's indemnification action. Because MTC lacks a meritorious defense, the Court need not consider the other two *Enron* criteria. *See Silverman v. RTV Communications Group, Inc.*, 2002 WL 483421, at *4 (S.D.N.Y. Mar. 28, 2002)("Because [defendant] fails to present a meritorious defense, this Court need not consider the remaining two factors governing the analysis"); *see also Sony Corp. v. Elm State Elec.*, 800 F.2d 317 (2d Cir. 1986) (affirming denial of motion to vacate default solely on the basis that defendant failed to demonstrate a meritorious defense).

## CONCLUSION

MTC's motion to vacate the default judgment is denied.

**SO ORDERED.**

_____
FREDERIC BLOCK
United States District Judge

Brooklyn, New York
June 24, 2005